Wilbur Donald TRIPP, Appellant,

v.

UNITED STATES of America,
Appellee.

Joseph. CAMMARATA, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15120, 15111.

United States Court of Appeals
Eighth Circuit.

April 28, 1955.

Wayne C. Smith, Jr., Clayton, Mo. (Charles M. Shaw, Clayton, Mo., and Mark M. Hennelly, St. Louis, Mo., were with him on the brief), for appellants.

Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., and Forrest Boecker, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants in these cases were indicted in three counts together with Melvin E. Von Behren, John Anselmo, Paul H. Hulahan, John Gagliano and Ross Longo, for violation of 18 U.S. C.A. § 659, by stealing, concealing, and having possession, contrary to the statute, of 625 cases of whiskey which were being transported by motor truck in interstate commerce from Owensboro, Kentucky, to Wichita, Kansas. The indictment also charged the defendants in a fourth count with conspiracy to steal, conceal and have possession of the same whiskey so being transported, in violation of 18 U.S.C.A. § 371. The defendant Ross Longo plead guilty to the conspiracy and the first three counts charging the substantive offenses were dismissed as to him. He was called as a witness for the government and testified in its behalf. John Gagliano plead guilty to all four counts. On jury trial of the case all other defendants were found guilty on all four counts. Appellant Wilbur Donald Tripp was sentenced to three years for the substantive offenses and to three more years for the conspiracy. Appellant Joseph Cammarata was sentenced to three years for the substantive offenses and to two

more years for the conspiracy. These two appeals were taken separately but were heard together.

There was substantial evidence on the trial to the effect that:

On the night of November 10, 1952, the defendant Ross Longo was engaged as a truck driver in the employ of Gallatin Truck Co., Inc., in hauling a truck load of 625 cases of whiskey in St. Louis County, Missouri. The load was in transit in interstate commerce from Owensboro, Kentucky, to Wichita, Kansas, and was of the value of about $29,734.75. Longo hauled the load from the place in St. Louis where he picked it up to a place "where he usually hung out", called the White Palace, at Jefferson and St. Louis Avenues in St. Louis, and had a cup of coffee there. He also had a talk with defendant Gagliano whom he had seen shortly before associated with defendant Tripp. On that occasion Longo had told the two men "where he usually hung out" and when he was going to work and Tripp had said he would see him later.

Longo left the White Palace at about 7:00 P.M. and was driving out Natural Bridge Avenue towards Highway 40 with the load of whiskey when Gagliano and Tripp drove up alongside him and honked. He pulled over alongside the road and stopped behind them. Tripp asked if he had a load of whiskey and on Longo's answering "I do", Tripp told Longo to follow him. Longo said, "If you want this you will have to take it yourself", so Tripp got in and drove the truck and Longo rode with him. The truck was driven out Natural Bridge to Lucas and Hunt and then south and to a salvage yard near St. Charles Rock Road. It entered the yard and went on into a building located on the premises. The defendants Von Behren, Hulahan, Cammarata and Gagliano were in the building and Longo exhibited the bills of lading to them showing what was contained in the load. Then all the defendants present proceeded to unload the whiskey in the shed. There was then a conference and defendant Tripp suggested that

Longo be taped and bound, which was done to give an appearance of resistance on Longo's part to the highjacking. Longo was then taken out Natural Bridge to Carson Road and left in the truck where he was discovered by two men. They took him to the Bluebird Tavern and the police interviewed him there. He made false statements to the police, sheriff and other officers to the effect that two negroes had held him up on the highway. He adhered to that story until shortly before the trial. His testimony was substantially as above set forth.

There could be no doubt that the crime was accomplished through concert of action by several persons and substantial evidence was adduced to connect each of the defendants with the common purpose. Defendant Longo, the truck driver, apparently began to harbor the idea of betraying his trust early in the summer of 1952. He addressed himself on the subject to defendant Anselmo whom he had known since childhood and Anselmo led him to defendant Hulahan. Hulahan drew in defendants Tripp and Gagliano who did the highjacking on the highway and defendant Von Behren arranged to store and conceal the loot. Von Behren built a partition in the building on his salvage lot which divided the building in half and put a door in the partition so as to permit the truck with the whiskey to be driven inside and concealed.

On this appeal the contention is made on behalf of the appellant Cammarata that there was no substantial evidence to support his conviction on the conspiracy charge. There was evidence that he was present with defendants Hulahan, Gagliano and Von Behren at the building in the salvage yard when the truck with the whiskey was driven there by defendant Tripp and he helped the unloading. He was privy to the binding and taping of Longo. Shortly afterwards he was at Hulahan's tavern with Tripp and Gagliano where the highjacking was discussed. There is no doubt that he aided in the commission of the substantive offenses. But there was no witness to

any act of participation in the crime by Cammarata prior to the arrival of the whiskey at the salvage yard.

Nevertheless, we think it cannot be held that the trial court erred in sustaining the conviction and imposing separate sentence for conspiracy upon Cammarata.

His going to the salvage yard in the darkness of the night and being there in company with defendants Hulahan and Von Behren, ready and willing to help in unloading and secreting the stolen whiskey when it arrived is persuasive evidence of prearrangement and that he had prior cognizance of and was a party to the criminal undertaking of his associates. Likewise his participation in the conference about what was to be done to conceal Longo's real connection with the highjacking and in the binding and taping of Longo and then continuing in association with the other defendants at Hulahan's tavern are corroborative of his participation as a co-conspirator as well as an aider in the commission of the crime.

The facts are stronger to support the conviction of Cammarata for the conspiracy than those found sufficient to support that charge in Thompson v. United States, 6 Cir., 145 F.2d 826. There the defendant trucker who had hauled some 500 cases of highjacked whiskey to a place of concealment left the premises for a very brief time and brought back two men who helped him unload it. It was night time, and the court held the evidence sufficient to establish that the two men who appeared so readily on the scene of the crime were privy to the criminal transaction and to support their conviction for conspiracy.

The evidence as to the defendant Tripp was sufficient to support his conviction of the substantive offenses and of the conspiracy.

■ Both appellants have complained that the court made certain comments in the course of the examination of the defendant Tripp which it is contended constituted prejudicial error and prevented a fair trial.

It appears from the record that when defendant Tripp was being examined as a witness by his counsel he undertook to narrate a conversation between himself and certain state officers. He said they told him they knew he had nothing to do with the highjacking and that the indictment against him in the federal court would be dismissed. Tripp said "they" wanted him to testify against one Mosley in an ouster suit and he refused. The court sustained objection by the prosecuting attorney that the testimony was hearsay. After the ruling the court commented to the effect that nobody bargained with the court and it made no promises at any time. The judge specified that he referred to the court itself. Tripp's counsel, who was conducting the examination, took no exception to the court's ruling nor to its comment and counsel for the other defendants on trial said nothing except that counsel for defendant Cammarata asked that a mistrial be declared.

The record indicates that at the time he asked that a mistrial be declared counsel for Cammarata did not point out any particular in which he thought the judge's comment concerning the court's practice of refusing to make promises to accused persons tended to prejudice Cammarata. The reason and the only reason counsel assigned for requesting the mistrial was "that one of the things that goes to the weight of Longo's testimony is the circumstances under which he had three counts dismissed." But neither Tripp's testimony nor the court's comment was related to such "circumstances". Cammarata's counsel also said, "I don't think the activities of the United States District Attorneys are such that under that last statement of the court it would be anything but prejudicial to the rights of Cammarata." "I ask that a mistrial be declared." But there was no connection between the "last statement of the court" (that it made no promises, never had and never would) and any activities of officers that have been pointed out in the record. The comments of the court are not shown to have been errone-

ous or prejudicial to Cammarata nor to any of the defendants.

Complaint is also made by appellants concerning a mild admonition to and rebuke of defendant's counsel expressed by the court in the heat of the trial. But no exception appears to have been taken by any one at the time and consideration of the record relating to the incident convinces that it was not prejudicially erroneous.

The record on the whole demonstrates that the appellants were accorded a fair and impartial trial without prejudicial error and the judgment is affirmed as to each appellant.